AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida

FILED by [signature] D.C.
FEB 20 2015
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

United States of America
v.
JOSEPH MCDONALD,

*Defendant(s)*

Case No. 15-8096-WM

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of December 17, 2013 in the county of Palm Beach in the Southern District of Florida, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| Title 18, U.S.C. Sections 922(g)(1) and 924(e) | Possession of a firearm by a prohibited person - convicted felon. |

This criminal complaint is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

[signature]
*Complainant's signature*

Richard Silva, TFO, ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date: February 20, 2015

[signature]
*Judge's signature*

City and state: West Palm Beach, FL

William Matthewman, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT 15-8096-WM**

I, RICHARD SILVA, first being duly sworn, do hereby depose and state as follows:

Introduction

1. I am presently assigned as a Task Force Officer (TFO) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have served in that capacity since January 2011. I am also a duly sworn Deputy Sheriff in and for Palm Beach County Florida. As a TFO with ATF, I conduct investigations pertaining to violations of federal law, including violations of the Gun Control Act under Title 18, United States Code, Chapter 44.

2. This affidavit is based upon my personal knowledge, review of reports, and information obtained from other law enforcement officials and civilians. This affidavit does not contain every detail known to me pertaining to the investigation, but rather, only those facts that I believe are necessary to support a finding of probable cause to issue arrest warrants and a criminal complaint for Joseph MCDONALD, based upon violations of Title 18, United States Code, Sections 922(g)(1) and 924(e), that is, possession of a firearm by a prohibited person – convicted felon.

Facts in Support of Probable Cause

3. On November 22, 2013, Palm Beach County Sheriff's Office (PBSO) Deputy Sherriff (D/S) Burey responded to 17368 Washington Way, Jupiter, Florida, in reference to a silver colored Nissan SUV bearing FL tag 201 LYU, possibly stolen, that was parked in the driveway. Upon arrival to the area, D/S Burey observed the silver Nissan Rogue, backed into the carport of the above address. D/S Burey exited his marked PBSO patrol vehicle and approached the passenger side of the vehicle on foot. D/S Burey noticed that the engine was running and saw a male (later identified as MCDONALD) crouched down in the vehicle. MCDONALD quickly

sat up in the driver's seat and pushed open the front passenger door. D/S Burey drew his PBSO issued service pistol and ordered MCDONALD to put his hands up where they could be seen. MCDONALD raised one of his hands in the air and said, "don't shoot me, don't shoot me." Using his right hand, MCDONALD grabbed the gear shifter, put the vehicle in the drive position and accelerated. The vehicle sped away from the carport and proceeded south on Washington Way. D/S Burey lost sight of the vehicle. D/S Burey described the male driver as thin with a small afro, gold teeth, and multiple tattoos on his body. D/S Burey informed detectives that he would be able to identify the driver of the vehicle.

4. On December 2, 2013, West Palm Beach Police Department (WPBPD) responded to 1655 W 32nd St. Riviera Beach, FL 33404, in reference to a battery. According to the victim, MCDONALD was in possession of a black firearm and was operating silver Nissan SUV (a rental vehicle with an unknown Florida license plate). WPBPD sought to arrest MCDONALD for Aggravated Battery, Aggravated Assault with a Firearm and False Imprisonment.

5. On December 17, 2013, at 2:30 p.m., D/S Burey positively identified MCDONALD from a photo lineup as the driver of the silver Nissan Rogue who fled from him on November 22, 2013. PBSO sought to arrest MCDONALD for grand theft auto, resisting without violence, and driving while license suspended, and issued a police B.O.L.O. broadcast for law enforcement officers to "be on look out" for a stolen silver 2013 Nissan Rogue bearing FL tag 201 LYU, in the area of 45th street and Haverhill Road in unincorporated West Palm Beach. D/S Carey indicated that probable cause existed to arrest Joe MCDONALD for grand theft auto. He also advised that the subject should be considered armed and dangerous and that he was also a suspect in a shooting that occurred in Jupiter, Florida on December 16, 2013.

6. Cpl. Cullen began patrolling the area of Gramercy Park in attempt to locate the vehicle, and at approximately 1:15 p.m., Cpl. Cullen located the vehicle traveling west on Caribbean Boulevard from Haverhill Road, West Palm Beach, Florida. Cpl. Cullen was traveling east on Caribbean Blvd along with D/S Breen, who was a passenger in the vehicle at the time. The silver Nissan proceeded to turn right (north) into the Saddlebrook development, which is a residential community with one way in and one way out and has one roadway that is a circle around the complex. The Nissan Rogue was directly in front of Cpl. Cullen's marked PBSO vehicle, D/S Breen and Cpl. Cullen both positively identified the driver as Joe MCDONALD. They both noted that MCDONALD had slightly more facial hair than the photo they viewed on the D.A.V.I.D. database and noticed that he was wearing a dark colored baseball style cap. The silver Nissan made a right turn and began traveling around the complex and subsequently pulled into a parking spot. Cpl. Cullen activated the emergency lights and siren in his PBSO vehicle to initiate a traffic stop. MCDONALD accelerated and proceeded through the complex at a high rate of speed. MCDONALD subsequently exited the community going east on Caribbean Boulevard and then north on Haverhill Road. MCDONALD traveled north on Haverhill Road at a high rate of speed towards Dyer Blvd. fleeing from Cpl. Cullen's marked PBSO vehicle as the emergency lights and sirens were both activated. Cpl. Cullen was ordered not to pursue the Nissan Rogue. From a distance Cpl. Cullen and D/S Breen observed MCDONALD turn eastbound on Dyer Blvd and then South on Military Trail, but then lost sight of the vehicle.

7. Once Cpl. Cullen cleared the intersection, he proceeded south on Military Trail. As Cpl. Cullen passed the Indian Trace development, D/S Breen noticed the silver Nissan Rogue traveling through the residential community. Cpl. Cullen turned around and pulled into the community to attempt to locate the vehicle and arrest MCDONALD. A few minutes later Cpl.

Cullen located the vehicle parked unoccupied in the front of 1016 Indian Trace Circle. Cpl. Cullen and D/S Breen parked a few buildings away in order to conduct surveillance. Shortly thereafter, Cpl. Cullen observed MCDONALD exit the north breezeway of 1018 Indian Trace Circle, wearing a white tank top and black cargo pants as he was carrying a clear plastic bag that contained brown clothing. Cpl. Cullen and D/S Breen noticed that MCDONALD was no longer wearing a dark colored baseball cap. MCDONALD looked directly at both deputies and then walked south away from both deputies along the sidewalk. Cpl. Cullen approached MCDONALD in his marked patrol vehicle, wearing a tactical uniform. Cpl. Cullen and D/S Breen quickly exited the marked PBSO vehicle. As both deputies exited their vehicle, MCDONALD, immediately took off running. Cpl. Cullen gave several commands for MCDONALD to "stop," but he continued, looking back at both deputies several times. As MCDONALD ran behind the buildings by the lake, he dropped the clear plastic bag containing the brown clothing and continued approximately 300 yards to the stairs at 1011 Indian Trace Circle. During the foot chase, MCDONALD turned around, looked at both deputies multiple times and acted as if he was going to surrender by putting his hands up, but instead continued running. As MCDONALD began to go up the stairwell, he again stopped and put his hands up as if he may surrender. Cpl. Cullen deployed his department issued dart firing stun gun (DFSG), striking MCDONALD in the back. MCDONALD was finally taken into custody.

8. Post-*Miranda*, MCDONALD asked, "was the vehicle just stolen?" When Cpl. Cullen asked which vehicle, MCDONALD responded, "I wasn't in a vehicle."

9. D/S Valencia and D/S Carey canvased the area from where Cpl. Cullen observed MCDONALD exit the north breezeway. During the search, D/S Valencia located a black laptop bag and brown baseball cap in the north breezeway outside of apartment 102. The black laptop

bag contained an Ingram model M10A1 .45 caliber semi-automatic pistol, serial no. S702474, with (1) live .45 caliber Federal round in the chamber and a high capacity magazine containing (30) live .45 caliber Federal rounds. The black laptop bag also contained (7) .45 caliber Federal rounds in the front pocket. D/S Valencia also located a set of car keys for the stolen Nissan Rogue on the east side of 1018 Indian Trace Circle.

10. MCDONALD was transported to PBSO District 3 substation and was placed into an interview room equipped with devices for audio and video recording. Post-*Miranda*, MCDONALD said that he was in the Indian Trace development visiting his cousin, and needed to take a shower. MCDONALD refused to provide the deputies with his cousin's name or where he/she lived. He stated that he was dropped off at the apartment complex by a "friend of a friend," but did not know his/her name. MCDONALD also refused to explain why he ran when approached by sheriff's deputies. At this point, MCDONALD became agitated about the questions he was being asked. He asked for his attorney to be present, and the interview concluded.

11. MCDONALD was charged with grand theft auto, fleeing/attempting to elude a marked patrol vehicle, two counts of resisting without violence and two counts of driving while license suspended with knowledge.

12. D/S Carey and D/S Valencia executed a vehicle search warrant on the stolen silver Nissan Rogue, FL tag 201 LYU, which revealed (1) .45 caliber Federal round in the closed center console of the vehicle. The round was consistent with the rounds found in the black laptop bag and the Ingram model M10A1 .45 caliber semi-automatic pistol, as well as the Federal spent casings at the scene of the shooting that occurred on December 16, 2013, in

Jupiter, Florida. Also located in the vehicle were multiple 1" x 2" baggies, containing what appeared to be and was confirmed through field tests to be marijuana and cocaine.

13. The Ingram model M10A1 .45 caliber semi-automatic pistol was submitted into PBSO evidence for forensic testing. Fingerprints testing yielded negative results, but DNA swabs were obtained from the firearms' trigger/trigger guard, frame/slide, and magazine. The swabs from the firearm along with the DNA standards from MCDONALD was submitted to Bode Technology located in Lorton, Virginia for DNA analysis. The analysis revealed that MCDONALD's DNA was present on the frame/slide of the Ingram model M10A1 .45 caliber semi-automatic pistol found in the black laptop bag on December 17, 2013. The report specifically stated that MCDONALD was determined to be the major source of DNA on the frame/slide of the Ingram model M10A1 .45 caliber semi-automatic pistol and that the probability of randomly selecting an unrelated individual with the same DNA profile, at 15 of 15 loci, was 1 in 210.0 Sextillion in the United States' Caucasian population, 1 in 66.0 Quintillion in the United States' African American population and 1 in 17.0 Sextillion in the United States' Hispanic population.

14. Certified records from the Palm Beach County Circuit Court establish that prior to December 17, 2013, MCDONALD was sustained of at least the following felony convictions, each of which was punishable for a term exceeding one year under Florida law:

- On August 20, 2002, MCDONALD was adjudicated guilty of Fleeing & Eluding, Second Degree, in Palm Beach County Circuit Court (PBCCC), Case No. 01-12671CFA02.

- On January 4, 2006, MCDONALD was adjudicated guilty of Sale of Cocaine, in Palm Beach County Circuit Court (PBCCC), Case No. 04-012748CFA02.

- On January 4, 2006, MCDONALD was adjudicated guilty of Shooting into an Occupied Vehicle and Felon in Possession of Firearm, in Palm Beach County Circuit Court (PBCCC), Case No. 04-012225CFA02.

- On April 3, 2012, MCDONALD was adjudicated guilty of Fleeing and Eluding, Third Degree, in Palm Beach County Circuit Court (PBCCC), Case No. 10-005730AMB.

15. On October 8, 2014, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Special Agent (SA) Michael Kelly, an ATF Interstate Commerce Nexus Expert for ATF, examined photographs of the aforementioned Ingram model M10A1 .45 caliber semi-automatic pistol and (39) rounds of Federal .45 ammunition and determined based on his training, experience, and the distinctive manufacturers' markings on said items, that both the firearm and ammunition were manufactured outside the State of Florida, and that they therefore, by their subsequent recovery in the State of Florida, traveled in and affected interstate and/or foreign Commerce.

<u>Conclusion</u>

16. Wherefore, on the basis of the foregoing facts, your affiant respectfully submits that probable cause exists to charge MCDONALD with Possession of a Firearm by a Convicted Felon, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(e).

FURTHER YOUR AFFIANT SAITH NAUGHT.

Richard Silva
TFO, ATF

Sworn to and subscribed before me
this 20th day of February, 2015, in
West Palm Beach, Florida.

HONORABLE WILLIAM MATTHEWMAN
UNITED STATES MAGISTRATE JUDGE

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**No. 15-8096-WM**

**UNITED STATES OF AMERICA**

**vs.**

**JOSEPH MCDONALD,**

**Defendant**
______________________________________/

**CRIMINAL COVER SHEET**

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003? ________ Yes ____X____ No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to September 1, 2007? __________ Yes ____X____ No

Respectfully submitted,

WIFREDO A. FERRER
UNITED STATES ATTORNEY

BY: ______________________________
BRANDY BRENTARI GALLER
ASSISTANT UNITED STATES ATTORNEY
Admin. No. A5501296
Brandy.Galler@usdoj.gov
500 S. Australian Avenue, Suite 400
West Palm Beach, FL 33401
561-820-8711